UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-344 (PLF) |
| v. | : | |
| ANTHONY BIGELOW | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant to a period of incarceration within the Guidelines range calculated in the Presentence Report.

**I.   BACKGROUND**

On October 14, 2005, the defendant, Anthony Bigelow, pled guilty to one Count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in violation of 18 U.S.C. §922(g)(1), and one Count of Unlawful Possession with Intent to Distribute Heroin in violation of D.C. Code § 48-904.01. The case is set down for a sentencing hearing on April 28, 2006 at 9:30 a.m.

As part of his plea, the defendant agreed that the following facts would have been established beyond a reasonable doubt had this case gone to trial: that on March 1, 2005, shortly before 11:00 a.m. an officer of the Metropolitan Police Department (MPD) saw the defendant appear to sell illegal drugs to a buyer in the unit block of Hanover Place, N.W., Washington, D.C. When the officer and another person went to investigate, a struggle took place between the defendant and police. Defendant fled, eventually getting caught in the unit block of O Street, N.W. When the police caught defendant, they found in one of his pants pockets a 25-caliber,

semi-automatic pistol.  Police also found about 322 ziplocks of suspected heroin in another of defendant's pants pockets.   The defendant agreed as part of the plea that each of the ziplocks contained heroin,[1] and that he intended to sell the heroin in his possession.

The defendant further agreed that the firearm found in his possession was operable, moved in interstate commerce prior to it being found in the defendant's possession, and was possessed by himself in connection with another felony offense he was committing, namely, the crime of unlawful possession with intent to distribute heroin.  In particular, the defendant admitted that at least one of the reasons he carried the gun was to protect himself while possessing the drugs.

Finally, as part of his plea, the defendant acknowledged that he had been convicted of a crime punishable by imprisonment for a term exceeding one year in the Superior Court of the District of Columbia in Cr. No. F-07470-84.

## II.     SENTENCING CALCULATION

### A     Statutory Maximum

The maximum sentence for Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding one Year in violation of 18 U.S.C. §§922(g)(1), a Class C felony, is incarceration for a period not more than 10 years and/or a fine of $250,000, or both.  The maximum sentence for Unlawful Possession with Intent to Distribute Heroin in violation of D.C. Code § 48-904.01 is incarceration for a period not more than 30 years and/or a fine of $500,000, or both.

---

[1] A DEA analysis of the substance in the ziplocks completed after the plea confirmed that the substance in the ziplocks was, in toto, in excess of 36 grams of heroin.

B.        United States Sentencing Guidelines Calculation

Based on a total offense level of 25 and a criminal history category of V, the Guidelines range for defendant's violation of 18 U.S.C. § 922(g) is 100 to 125 months. However, the statutory maximum sentence is 10 years. Therefore the guidelines imprisonment range is 100 to 120 months. PSR at ¶ 62. Because the applicable Guidelines range is in Zone D of the Sentencing Table, the defendant is not eligible for probation. See USSG § 5B1.1, Comment n. 2, and USSG § 5C1.1(f). The PSR writer did not find factors indicating that a downward departure from the Guidelines was warranted. See PSR at ¶ 81.

Under the D.C. guidelines, the defendant's conviction of Unlawful Possession with the Intent to Distribute falls within Group 2 on the Drug Grid, and the defendant's criminal history score falls within Category "E," resulting in a voluntary guidelines range of 28+ months of incarceration. PSR at ¶ 63. Under the D.C. guidelines, the defendant would not be probation eligible. PSR at ¶ 70.

C. The Impact of Booker

In United States v. Booker, 2005 WL 50108 (U.S. Jan. 12, 2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 2005 WL 50108, at *16. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular

crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. See 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Id. at *24.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker at *27 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in 18 U.S.C. Section 3553(a), such as "the

nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. Section 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases").  Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 2005 WL 50108, at *26; see id. at *27 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at *21 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at *19 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at *42 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at *47 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity."). Since the Guidelines currently represent the only extant benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See Booker, at *24. Nevertheless, the Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. Section 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable.

Booker not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, Booker also continues to subject the explanation of the decision to sentence outside of the correctly calculated range to a court of appeals reasonableness review. See 18 U.S.C. Section 3553© (mandating consideration of the Guidelines); 18 U.S.C. Section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range); 18 U.S.C. Section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); 18 U.S.C. Section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reasons in the judgment and commitment order).

      Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. This is so, said the court in United States v. Wilson, 2005 WL 78552 (D. Utah Jan. 13, 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an

appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at *1. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further in Section IV below, no unusual circumstances exist that warrant an exception to the preference for guideline sentencing.

### III. THE PRESENTENCE INVESTIGATION REPORT CORRECTLY CALCULATES THE DEFENDANT'S GUIDELINES RANGE

The defendant asserts in his sentencing memorandum that the Presentence Investigation Report erroneously calculates both his offense level and criminal history category. Def.'s Sent. Memo. at 5-7. Defendant is incorrect. Pursuant to § 2K2.1 (a)(2), the defendant's base offense level should be 24 because he committed the offense of conviction subsequent to sustaining at least two felony convictions of a crime of violence, namely his March 14, 1979 conviction for Assault with Intent to Rob while Armed/Attempted Robbery, and April 3, 1985 conviction for Assault with Intent to Rob while Armed. Both convictions fall within the 15-year time period required by §4A1.2(e)(1) for a prior conviction to be counted under 2k2.1(a)(2). See App. Note 12 of § 2K2.1 (allowing that only felony convictions that received criminal history points under § 4A1.1(a), (b), or (c) are qualifying convictions under § 2K2.1(a)(2)). Defendant's April 3, 1985 conviction for Assault with Intent to Rob while Armed conviction falls within the 15-year time period required by § 4A1.2 (e)(1) for a prior conviction to be counted under 4A1.1(a)-(c) as the defendant was serving his sentence on that conviction until June 19, 1992, well-within the 15

year period prior to the commencement of the offense of conviction (a period that runs between March 1, 1990 and the date of the offense, March 1, 2005).

Defendant's 1979 Assault with Intent to Commit Robbery While Armed/Attempt Robbery conviction also falls within this 15-year time period.  While defendant was originally released from his incarceration on his 1979 conviction on or about Oct. 5, 1983 (prior to the March 1, 1990 cut-off for inclusion in the defendant's present criminal history calculation), pursuant to Guidelines' section  4A1.2(k)(2)(B)(i), revocation of parole can revive an otherwise expired conviction if incarceration following revocation falls within the 15-year period prior to the commencement of the instant offense. Specifically, in the case of an adult term of imprisonment totaling more than one year and one month (which was the case here), it is the "date of last release from incarceration on such a sentence" following revocation of parole which is applicable, not the last day of incarceration of the original sentence prior to revocation.  See 4A1.2(k)(2)(B)(i).  In this case, and as demonstrated in the attached parole documents, the defendant was revoked on parole for the 1979 conviction on July 22, 1992 – after he had completed his original sentence on his 1985 conviction for Assault with Intent to Rob while Armed.[2]  Thereafter, he remained incarcerated on his 1979 conviction until he was paroled again in February 1994, which was well-within the March 1, 1990 cut-off for inclusion in the defendant's criminal history score, and for adjustment of his base offense level under 2k2.1(a)(2).

---

[2] Note, as demonstrated in the parole documents attached hereto as Exhibit A, the October 31,1984  U.S. Parole Commission parole warrant issued on the defendant's 1979 conviction after he incurred his 1984 arrest for Assault with Intent to Commit Robbery While Armed, was never executed.   Rather, the defendant was convicted on his 1984 charge, did his time on that charge, and then, upon his release from that charge on or about June 1992, a different DC Board of Parole warrant (issued July 11, 1988) was executed and his parole on the 1979 charge revoked on July 22, 1992.

### IV.     DEFENDANT SHOULD BE SENTENCED WITHIN THE GUIDELINES RANGE

The Government recommends that the Court sentence the defendant within the Guidelines range of 100-125 months.  Such a sentence would not only be presumptively reasonable, for the reasons outlined in section II.C. above, but would also be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553.  Those factors fall into three main categories:  the nature of the offense, the needs of the public, and the history and characteristics of the defendant.  United States v. Ranum, 353 F. Supp.2d 984, 989 (E.D. Wis. 2005).

The defendant's illegal conduct represents a real and present danger to the community.  Considering the level of gun violence in this City, a 922(g) conviction would be a very serious offense in any case.  When combined with the defendant's possession of over 322 ziplocks of heroin and his admission that he possessed the gun to protect himself while selling that heroin, the defendant's actions are deserving of severe reproach.  Drugs, and drug-related gun violence, are the source of the vast majority of crimes in this City and of violence against its citizens.   It is vital that the Court send a message to both the defendant and the community that drug dealing, and the possession of guns by drug dealers, will not be tolerated.

Apart from the seriousness of the present offense, the defendant also has a significant criminal history that should be considered by the Court   Defendant's instant gun and drug dealing convictions represent his eighth and ninth adult convictions.   He has also sustained felony convictions for Assault with Intent to Rob, Attempted Robbery, and Assault with Intent to Rob while Armed, the latter of which involved an armed robbery with the defendant as the

gunman. More recently, the defendant committed a domestic Assault and Battery and possessed cocaine in Virginia, and was convicted of a series of thefts in the District of Columbia. Further, the defendant presently has pending against him in Maryland a Possession with Intent to Distribute Heroin case involving the possession of 31 baggies of heroin. Finally, it is significant that the defendant committed the instant offenses while on <u>probation or parole in four other matters</u>. Given the seriousness of the defendant's actions in the instant case and his long criminal history, the government recommends a sentence within the Guidelines range.

Finally, while the government agrees that the defendant indicated very quickly in this case that he wished to accept responsibility for his actions and, to that end, he agreed to exclude time under the Speedy Trial Act within which the government was required to ask the grand jury to return a felony indictment, the defendant has already received a substantial benefit for his early acceptance of responsibility. Specifically, the defendant received a three point decrease in his offense level under the Guidelines. Had the defendant not received this benefit, his Guidelines range would have been 130-162 months rather than 100-125 months. Under the plea, the defendant was also permitted to plea guilty to District of Columbia rather than federal charge. Accordingly, the defendant has already received all the leniency he should under the plea. Sentencing the defendant within the Guidelines range would both serve the interests of the community and give both the government and the defendant the benefit of the bargain negotiated.

## V.   **CONCLUSION**

The nature of the offense, the needs of the public and the defendant's criminal history all suggest a period of incarceration within the Guidelines range of 100-125 months would be

appropriate. Such a sentence would reflect the seriousness of this offense, the community's need for protection from the dangers posed by the defendant's possession of both a substantial quantity of drugs and a loaded gun, and by his serious criminal history.

                    Respectfully,

                    KENNETH L. WAINSTEIN
                    United States Attorney
                    Bar No. 451058

                    _____

                    G. Michael Harvey
                    Assistant United States Attorney
                    Narcotics Section, Mass. Bar No. 447465
                    555 4th Street, N.W. #4243
                    Washington, DC 20001
                    Phone: 305-2195; Fax: 514-6010

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Mary Petras, Esquire, this 27th day of April, 2006.

                    _____

                    G. Michael Harvey
                    Assistant United States Attorney